**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 6:08-0205-05** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **MELVIN WAYNE ALEXANDER (05)** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION REGARDING MOTION TO SUPPRESS EVIDENCE and FOR RETURN OF PROPERTY PURSUANT TO FED. R. CRIM. PROC. 41(g) and ORDER REDUCING TIME TO FILE OBLIGATION

Before the court is a Motion to Suppress Evidence and For Return of Property filed by Defendant Melvin Wayne Alexander (hereinafter "Alexander") on September 8, 2009. [rec. doc. 312]. For the reasons set forth below, it is recommended that Alexander's motion be **DENIED.**

*Procedural History*

The Government seeks to introduce evidence seized as a result of an August 21, 2008, search of the premises located at 108 Cochrane Street[1] in the city of Lafayette, Louisiana, pursuant to a search warrant.[2] On September 8, 2009, Alexander filed a motion to suppress evidence seized as a result of the search, asserting that the aforementioned premises were searched without a valid search warrant, and without probable cause, in violation of the Fourth Amendment. [rec. doc. 312]. On September 9, 2009, the United States of America (hereinafter "Government") filed a Response to Alexander's Motion to Suppress with Authorities In Opposition, asserting, in part, that

---

[1] This home is owned by Alexander's parents and is where his mother resides. *See* rec. doc. 318, at 1.

[2] On August 21, 2008, Agent Chad Berard of the Drug Enforcement Administration appeared before the undersigned and applied for the subject warrant. In addition to the written affidavit, Berard made a sworn statement to provide probable cause for the search warrant pursuant to Fed. R. Crim. Proc. Rule 41(d)(2).

Alexander lacks standing to contest the constitutional validity of the search. [rec. doc. 318]. On September 14, 2009, this Court issued a Minute Entry requiring Alexander to file evidence showing that he has standing to contest the validity of the search at issue herein. [rec. doc. 323]. On September 15, 2009, Alexander filed his Response To Magistrate's Minute Entry and Order, asserting, in part, that he had a "legitimate expectation of privacy" in the premises of 108 Cochrane Street. [rec. doc. 324].

### *Rule 41, Federal Rules of Criminal Procedure*

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Rule 41(g) of the Federal Rules of Criminal Procedure, entitled "Motion to Return Property," provides in part that: "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Rule 41(g) further provides that "[t]he court must receive evidence on any factual issue necessary to decide the motion."

### *Case law and Analysis*

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128,

133-134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see also Simmons v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 974 (1968) (the "rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure."). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134 (citations omitted). "And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Id.* (citations omitted).

To challenge the search of the premises located at 108 Cochrane Street, Alexander must demonstrate that he had a legitimate expectation of privacy in the place searched, and that his expectation was reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); *United States v. Ibarra*, 948 F.2d 903, 905 (5th Cir. 1991). A person has an expectation of privacy protected by the Fourth Amendment if he has a subjective expectation of privacy, and if society is prepared to recognize that expectation as objectively reasonable. *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

In assessing the reasonableness of an individual's expectation of privacy, no one factor is invariably determinative. *See United States v. Haydel*, 649 F.2d 1152, 1154

(5th Cir. 1981) *citing Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In *Haydel*, the United States Court of Appeals for the Fifth Circuit listed the following factors to consider when addressing this issue:

> ". . . whether the defendant has a (property or) possessory interest in the thing seized or the place searched; whether he has the right to exclude others from that place; whether he has exhibited a subjective expectation that it would remain free from governmental invasion; whether he took normal precautions to maintain his privacy there; and whether he was legitimately on the premises."

649 F.2d at 1155.

The United States Supreme Court has held that overnight guests generally have a reasonable expectation of privacy in their host's home. *Minnesota v. Olson*, 495 U.S. 91, 96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). The United States Court of Appeals for the Fifth Circuit has also held that "an expectation of privacy in the home of another" will be protected "when it is based on a visit which represents 'a longstanding social custom that serves functions recognized as valuable by society.' " *United States v. Vega*, 221 F.3d 789, 798 (5th Cir. 2000) *quoting Olson*, 495 U.S. at 98. Thus, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Carter*, 525 U.S. at 90. *See also United States v. Meyer*, 656 F.2d 979, 981 (5th Cir.1981) *citing Rakas*, at 142-143 (mere presence on the searched premises, by invitation or otherwise, is insufficient in itself to create a protectable expectation of privacy).

4

In this case, Alexander clearly did not reside at the home, nor was he a co-tenant or co-owner of the home.  Alexander testified in his Affidavit that he was a frequent visitor at his mother's home, that he often kept personal belongings at her home, and that he fairly frequently stayed overnight.  Alexander cites *Minnesota v. Olson*, *supra,* in support of the proposition that "staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society."  However, *Olson* is distinguishable because, in that case, the defendant had spent the night previous to his arrest in the house which was the subject of the search at issue.  In the instant case, there is no evidence in the record that Alexander had spent the night at the subject premises in over two weeks prior to the search, much less on the evening just before the search.

Additionally, Alexander cites *Rose v. United States,* 629 A.2d 526 (D.C. 1993) for the proposition that the close kinship of the defendant and the owner of the searched premises is relevant in determining standing, even without an overnight stay.  The facts in *Rose* are likewise distinguishable.  Alexander has failed to offer any evidence that he had a key to the home or that he had unencumbered access to the home.  *See also United States v. Haydel,* 649 F.2d 1152 (5th Cir. 1981).  Further, Alexander failed to offer evidence that he had the ability to exclude others from the home when he wanted privacy.

More importantly, Alexander testified in his Affidavit that he had not visited the home for several days prior to his arrest, which occurred on August 13, 2008.  The search took place on August 21, 2008.  Thus, the undersigned concludes that Alexander had not

5

been to his mother's home for at least ten days prior to the search, ans was incarcerated at the time the search occurred. Accordingly, the undersigned cannot find that Alexander exercised the requisite control over the home on the day of the search, given his incarceration, for his assertion of a legitimate privacy interest in the home. Again, Alexander was **not** present when this search was conducted, nor had he been an overnight guest there on the prior evening.

Alexander has not made a showing that he subjectively expected, or could legitimately expect, privacy in the areas which were the subject of the search and seizure he seeks to contest. This is especially true since Alexander was not present at the residence at the time of the search and had not been present at the residence for at least ten days prior to the search, due to his incarceration.

For the foregoing reasons, the undersigned finds that Alexander has not met his burden of showing that he had a legitimate, reasonable expectation of privacy at 108 Cochrane Street at the time of the search, which took place after he had been incarcerated. Therefore, the undersigned finds that Alexander may not claim the protection of the Fourth Amendment to challenge the search of the premises.

### *Conclusion*

After review of the Fifth Circuit case law and defendant's affidavit, the undersigned finds that the question is this – whether a person who has been incarcerated since August 13, 2008, and who had not visited the premises for several days before his

arrest, has standing to contest the constitutional validity of the search at his mother's residence which was conducted on August 21, at least eight days after defendant's incarceration. As is the case with most of these types of issues, the proper posing of the question makes the answer clear. Alexander has no standing to contest the constitutional validity of the search.

Quite simply, it is not objectively reasonable that the defendant had a subjective expectation of privacy in his mother's home while he was incarcerated. *Katz, supra; Ibarra, supra.* The defendant has no standing to contest the constitutional validity of this search. Because the defendant has no standing to contest the constitutional validity of the search, the sufficiency of the underlying affidavit is not addressed herein.[3]

Thus, after consideration of the motion and opposition filed, and after a review of the applicable law, it is recommended that Alexander's motion be **DENIED.**

Because trial in this case is set to commence on September 28, 2009, **IT IS ORDERED** that any party aggrieved by this Report and Recommendation shall file specific, written objections with the Clerk of Court on or before **12:00 noon on September 23, 2009.** Any response to any such objection shall be filed by **12:00 noon on September 24, 2009.** Counsel are directed to furnish a courtesy copy of any such

---

[3]It should be noted, however, that the affidavit is much more than "bare bones." Agent Berard appeared before the undersigned and detailed, under oath on the record, probable cause for the search. *See* Rec. Doc. 318-2. This procedure is allowed under Rule 41, Federal Rules of Criminal Procedure.

7

objections or responses to the District Judge at the time of filing.[4]

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3d 1415 (5th Cir. 1996).

Thus done and signed this 16th day of September, 2009, in Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

---

[4] The court may require a response to a Report and Recommendation in less that ten days if the exigencies of the calendar require. *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978). *See also Tripati v. Drake*, 908 F.2d 977 (9th Cir.1990) and *U.S. v. Doherty*, 2009 WL 1310877, *10 (E.D.N.Y. 2009). Shortening the response period in this case is particularly appropriate since the Motion to Suppress was filed so close to the trial date and after the case has been pending for a significant period of time.